UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JORDAN GANTLIN, ) | |
| ) | CA. NO.: 2:18-cv-02063-DCN-MGB |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DANTE GHI IN HIS INDIVIDUAL ) | |
| CAPACITY; DEBORAH COLE IN HER ) | |
| INDIVIDUAL CAPACITY AND AS AN ) | **AMENDED COMPLAINT** |
| EMPLOYEE OF NORTHWOODS ) | |
| MALL CMBS, LLC D/B/A ) | |
| NORTHWOODS MALL; NORTHWOODS ) | |
| MALL, CMBS, LLC D/B/A ) | |
| NORTHWOODS MALL; CBL & ) | |
| ASSOCIATES MANAGEMENT, INC., ) | |
| AND ERMC, II, LP ) | |
| Defendants. ) | |
| _____) | |

Plaintiff Jordan Gantlin, by and through his undersigned counsel, complaining of Dante Ghi ("Defendant Ghi") in his individual capacity, Deborah Cole ("Defendant Cole") in her Individual Capacity and as an employee of Northwoods Mall, CMBS, LLC d/b/a Northwoods Mall, Northwoods Mall, CMBS, LLC d/b/a Northwoods Mall, CBL & Associates Management, Inc. and ERMC, II, L.P. (collectively "Northwoods Mall Defendants") alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1343(a)(3) & (4), 1367 and personal jurisdiction over the parties.

2. Plaintiff is a citizen and resident of Charles County in the State of Maryland.

3. Upon information and belief, Defendant Dante Ghi is a citizen and resident of Charleston County, South Carolina. He is, and was at all relevant times, employed by the City of North Charleston and/or the City of North Charleston Police Department as a Certified Class 1 Law Enforcement Officer who completed training at the South Carolina Criminal Justice Academy which included training on the rights afforded to all citizens under the United States Constitution, including the rights guaranteed by the Fourth Amendment and the Fourteenth Amendment.

4. Upon information and belief, Defendant Deborah Cole is a citizen and resident of Charleston County, South Carolina. She is, and was at all relevant times, employed by the Northwoods Mall Defendants as a security officer. At all times relevant hereto, Defendant Cole was acting within the scope of her employment and as an agent for the Northwoods Mall defendants.

5. Upon information and belief, Defendant Northwoods Mall CMBS, LLC d/b/a Northwoods Mall ("Northwoods Mall") is a foreign corporation existing under the laws of the State of Delaware and operating in the State of South Carolina and is doing business at 2150 Northwoods Blvd., North Charleston, South Carolina. This Defendant willfully, knowingly, and voluntarily undertook duties which are traditionally reserved for the State of South Carolina by forming its own police department and engaging in activities jointly with law enforcement officers who derive their jurisdiction and power from state law.

6. Upon information and belief, Defendant CBL & Associates Management, Inc. is a corporation organized and existing under the laws of Delaware doing business in North Charleston, South Carolina under contract with Northwoods Mall to manage Northwoods Mall.

7. Upon information and belief, Defendant ERMC, II, L.P. (ERMC) is a Tennessee business organization authorized by the South Carolina Secretary of State to do business in this

2

state and is doing business in North Charleston under contract with Northwoods Mall (and its predecessor North Charleston Joint Venture, LLC) through its managing agent CBL, to provide security services for Northwoods Mall and CBL at Northwoods Mall.

8. At all times relevant hereto the Northwoods Mall defendants employed Defendant Ghi and Defendant Cole and as such the Northwoods Mall defendants are legally responsible for the acts and/or omissions of its employees and its agents which were a proximate cause of constitutional violations, injuries and damages suffered by Plaintiff Jordan Gantlin. Nonetheless, Northwoods Mall is responsible for its own acts and/or omissions as more fully set forth below.

9. This action involves state law claims based upon the laws of the State of South Carolina as well as federal claims for violations of the Fourth and Fourteenth Amendments to the United States Constitution brought pursuant to 42 U.S.C. § 1983.

10. This Honorable Court has subject matter jurisdiction over the claims asserted pursuant to 42 U.S.C. § 1983 herein and personal jurisdiction over the parties. The Court also has concurrent jurisdiction over the claims asserted pursuant to the laws of the State of South Carolina. Venue is properly set in Charleston, South Carolina where all acts and omissions giving rise to this matter took place.

## FACTUAL BACKGROUND

11. Jordan Gantlin ("Jordan") is a nineteen (19) year old African American male who graduated from high school in June of 2017. In October of 2016, he was a high school senior who lived at home with his loving parents. He was a good student, an athlete, and a member of the school band. In and around October 21, 2016, Jordan traveled to South Carolina with his mother Yolanda Gantlin ("Mrs. Gantlin"), his father Enoch Gantlin, and his friend Darrius Wilhite ("Darrius") for South Carolina State University's homecoming. Mrs. Gantlin is a South Carolina

State University alumnus and currently serves as a Senior Defense Analyst for the United States Department of State.

12. The Gantlin family and Darrius went to Orangeburg, South Carolina on October 22, 2016 for the South Carolina State University homecoming events. Following the events, they traveled back to North Charleston, where Enoch Gantlin's mother lives and where they were staying the night. Mrs. Gantlin, Jordan, and Darrius decided to go to the Northwoods Mall to shop for clothes and shoes. Mrs. Gantlin and Jordan had not been to Northwoods Mall in several years and Darrius had never been to Northwoods Mall. Enoch Gantlin went to his mother's house in North Charleston and planned to see his family after they returned from Northwoods Mall.

13. Mrs. Gantlin, Jordan, and Darrius entered Northwoods Mall near the Belk Store entrance around 7:00 pm on the evening of October 22, 2016. Soon after they entered the Mall, Mrs. Gantlin told Jordan and Darrius that she was going to look for clothes at the Belk's store located within the mall. She told Jordan and Darrius to look for shoes and then meet her at the Northwoods Mall Food Court in thirty (30) minutes.

14. Jordan and Darrius went to Footaction and looked for athletic shoes. After being in the store for a short amount of time, they left the store where they were stopped in the Northwoods Mall concourse by Officer Cole, a security guard for Northwoods Mall. Neither Jordan nor Darrius had committed any crime. They had not done anything remotely suspicious or that would give rise to any suspicion of a crime. The two were simply walking from one store to another place in the Northwoods Mall as their mother and natural guardian Mrs. Gantlin asked them to do. Further, upon information and belief, there were no reports from any person or store that Jordan and Darrius were acting suspicious in any manner whatsoever.

15. Officer Cole asked Jordan and Darrius their ages and then asked for their identification allegedly in order to comply with Northwoods Mall's new Youth Escort Policy ("YEP"). This policy forbids persons under the age of eighteen (18) from being in Northwoods Mall without a chaperone. The policy had been in effect for less than one (1) month and the boys had no knowledge of the same. Upon information and belief, Jordan and Darrius were singled out for questioning and detainment based on their race.

16. Jordan and Darrius both informed Officer Cole that they were seventeen (17) years old and that they did not have identification on them. Jordan also informed Officer Cole that his mother, Mrs. Gantlin was located in the Northwoods Mall. Yet, even though Officer Cole had actual knowledge that Mrs. Gantlin, the mother and guardian of Jordan and Darrius, was located within the Northwoods Mall, Officer Cole told the boys they were trespassing and must leave the Northwoods Mall. At no time were Jordan or Darrius placed on trespass notice before their interaction with Office Cole. Jordan and Darrius began to walk towards the exit from which they entered the mall in compliance with Officer Cole's instruction.

17. Immediately after they began to walk towards the Belk Store entrance of Northwoods Mall, they were detained by Defendant Ghi without any justification or lawful basis. Defendant Ghi shoved Jordan and Darrius against the wall, searched them, and then placed them in handcuffs.

18. Defendant Ghi seized Jordan and Darrius transporting them against their will off of the floor of the Northwoods Mall to the "Arbitration Room" which is located in the back room of Northwoods Mall. The "Arbitration Room" is a law enforcement-styled interview room used at times as a holding cell within Northwoods Mall. Jordan and Darrius were paraded in handcuffs through the mall and in view of mall employees, customers, and the public.

19. Defendant Ghi and Northwoods Mall detained Jordan and Darrius in the "Arbitration Room," arrested them for trespass, and then arranged for them to be transported to the county jail.

20. Defendant Ghi indicated in his report that he arrested Jordan and Darrius because they were from out of state and "posed a flight risk." Upon information and belief, it is neither unlawful to be from a state other than South Carolina or to be a "flight risk." While Jordan and Darrius were in handcuffs, and in the custody of five (5) separate police officers, Officer Cole threatened to charge Jordan and Darrius with the offense of threatening a police officer because she did not like the way the young men were looking at her. Neither Jordan or Darrius made any threats towards Officer Cole or any other person.

21. During this entire ordeal, Defendant Ghi and the Northwoods Mall took no steps to contact Mrs. Gantlin, Jordan and Darrius's chaperone and guardian, who was literally <u>in the mall</u> while Jordan and Darrius were being arrested. Upon information and belief, while in the "Arbitration room" within Northwoods Mall, Plaintiff received multiple calls from Mrs. Gantlin. Because Plaintiff was in handcuffs, he could not answer the incoming call. While at least four officers from the North Charleston Police Department were present, no officer attempted to answer the phone to either verify Plaintiff's assertion that he was with a guardian or to advise the parent what was happening. In fact, upon being told that Mrs. Gantlin was located in the Northwoods Mall, Defendant Ghi remarked that if he ran into Mrs. Gantlin in the Mall, he would let her know. Of note, Defendant Ghi had never met Mrs. Gantlin and did not know what she looked like other than the fact that she is African American.

22. Defendant Ghi noted that he activated his body camera during his detainment and search of Jordan and Darrius but that it "malfunctioned during contact" such that there is no video

of this interaction.  Plaintiff is informed and believes that Defendant Ghi has had the same body camera (1051512567) since September 24, 2015, and there were no repairs or issues reported on the body camera.

23.     Defendants transferred Jordan and Darrius to the North Charleston Police Department Holding Facility via police transport van where they were placed a holding cell. Finally, after several hours of being detained, Jordan was allowed to contact his mother.  At the time, she was still in the Northwoods Mall frantically searching for him and Darrius.  Not surprisingly, Defendant Ghi had not run into her in the Northwoods Mall following the arrest of Jordan and Darrius.  Further, none of the Defendants ever tried to contact Mrs. Gantlin and alert her of the situation even though they knew she was his chaperone and was in the mall.

24.     Jordan was eventually processed and transported to the Sheriff Al Cannon Detention Center.  Jordan spent the night in jail after being criminally charged with trespass after notice.  Jordan was released from jail on October 23, 2016 after being forced to pay his trespass ticket.

25.      Defendants arrested and jailed Jordan for failing to follow the Northwoods Mall YEP.  No reasonable person could conclude that Jordan intentionally violated the YEP.  In fact, Jordan <u>did not violate it at all.</u>

26.     Defendants intentionally and purposefully chose to prosecute Jordan even though Defendants knew Jordan did not violate any law of the State of South Carolina.  Employees of Northwoods Mall and Defendant Ghi attended Jordan's initial hearing to actively participate in his prosecution.  As a result, Jordan was forced to hire a lawyer to defend him against this fraudulent criminal charge.

27. After months of work by his attorney, the Defendants unilaterally stated they would drop the charges if Jordan did not get into trouble for six (6) months. Jordan did not agree to this "deal" and requested a jury trial to prove his innocence with respect to Defendants allegations. The matter was never called for trial by Defendant Ghi. Instead, the Defendants arranged Jordan's charges to hang over his head for an additional six (6) months after having decided the charge should be dismissed with prejudice.

28. During the time this charge was pending, Jordan tried to enter the Armed Forces to follow in his father's footsteps. However, Jordan was not allowed to enlist because of the pending charges.

29. As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages:

   a. Violation of his constitutional rights under the Fourth Amendment; to the United States Constitution to be free from an unreasonable search and seizure of his person;
   b. Violation of the Fourteenth Amendment substantive due process right; and
   c. Tremendous and irreparable emotional and mental harm.

30. The grossly negligent, reckless actions of Defendants violated laws of the State of South Carolina as well as clearly established and well-settled federal constitutional rights of Plaintiff with deliberate indifference:

   a. Freedom from an unreasonable search and seizure;
   b. Freedom from the use of excessive, unreasonable, and unjustified force against his person;
   c. Equal Protection under the law; and
   d. Substantive Due Process.

## COUNT ONE- DEPRIVATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS ACTIONABLE UNDER 42 U.S. CODE § 1983
## (FALSE ARREST AND MALICIOUS PROSECUTION INCORPORATED PURSUANT TO THE FOURTEENTH AMENDMENT)

31.     Plaintiff reincorporates and realleges all preceding paragraphs as if fully set forth herein.

32.     Plaintiff is informed and believes during Reconstruction African American citizens were denied the right to vote and that a debate occurred in our country that resulted in the ratification of the Fifteenth Amendment.  Further, Plaintiff is informed and believes the Fifteenth Amendment was made possible in part by black abolitionists like Frederick Douglass who in 1865 poignantly stated:

> "But if we know enough to be hung, we know enough to vote.  If the Negro knows enough to pay taxes to support government, he knows enough to vote, taxation and representation should go together.  If he knows enough to shoulder a musket and fight for the flag for the government he knows enough to vote. What I ask for the Negro is not benevolence, not pity, not sympathy, but simply justice."

(Frederick Douglas, Speech before Massachusetts Anti-Slavery Society, April 1865.)

33.     Plaintiff is informed and believes subsequent to the Fifteenth Amendment's enactment countless acts of aggression were committed against African Americans for reasons related solely to the color of their skin and for the purposes of depriving them of the constitutional rights guaranteed by the Fifteenth Amendment and that these constitutional violations were committed by State actors and private persons.

34.     Plaintiff is informed and believes that the many constitutional violations committed against African Americans led Congress to pass 42 U.S.C. § 1983 during the 42nd Congress in 1871 and that although Section 1983 was the result of African American suffering it went further ensured all citizens a right to enforce equal protection under the law.

35. Plaintiff is informed and believes Section 1983 creates liability for state actors and private persons who violate the constitutional rights of any United States citizen and that Congress's original intent to extend liability to private persons is evidenced by the name (Ku Klux Klan Act) given to the 1871 amendment to the Civil Rights Act.

36. Defendant Ghi at all times relevant to this Complaint acted under color of state law and exercised power possessed by virtue of state law in his position as a police officer with the City of North Charleston. Further, Defendant Ghi, acted jointly with the other co-defendants to produce constitutional violations against Plaintiff, namely the right to be free from unnecessary governmental intrusion, unlawful seizure and detention of Plaintiff, denial of due process, and the eventual arrest and prosecution of Plaintiff.

37. Defendant Cole at all times relevant to this Complaint acted under color of state law when she voluntarily undertook the duties traditionally reserved by the State of South Carolina by virtue of state law in her position as a security guard with the Northwoods Mall Defendants. Further, Defendant Cole, acted jointly with the other co-defendants to produce constitutional violations against Plaintiff, namely the right to be free from unnecessary governmental intrusion, unlawful seizure and detention of Plaintiff, denial of due process, and the eventual arrest and prosecution of Plaintiff.

38. Defendant Northwoods Mall acted under the color of state law when they voluntarily undertook duties which are traditionally reserved for the State of South Carolina. Defendant Northwoods Mall also acted in agreement, concert, and joint action with Defendant Ghi and Defendant Cole to violate Plaintiff's constitutionally guaranteed rights as set forth herein.

39. The Defendants' conduct of stopping Plaintiff, searching him, placing him in handcuffs, and detaining him in a private interrogation and holding room of Northwoods Mall

deprived Plaintiff of his rights, privileges, or immunities secured by the Constitution of the United States.

40. Particularly, Defendant's conduct deprived Plaintiff of his rights protected by the Fourth Amendment of the Constitution of the United States, guaranteeing citizens the right "to be secure in their persons…against unreasonable…seizures" of the person and their right to be free from unnecessary governmental interference.

41. Defendant's actions were not objectively reasonable in light of the facts and circumstances that Plaintiff did nothing illegal or even remotely suspicious to justify any police interactions.  And Defendant conducted an unreasonable stop and seizure, arrest, and imprisonment of Plaintiff.

42. As a direct and proximate result of the constitutional violations committed by Defendants Plaintiff has suffered and continues to suffer tremendous and irreparable emotional and mental harm and is entitled to actual and punitive damages.

**COUNT TWO- DEPRIVATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS ACTIONABLE UNDER 42 U.S. CODE § 1983
(EXCESSIVE FORCE INCORPORATED PURSUANT TO THE FOURTEENTH AMENDMENT)**

43. Plaintiff reincorporates and realleges all preceding paragraphs as if fully set forth herein.

44. Defendant Ghi at all times relevant to this Complaint acted under color of state law and exercised power possessed by virtue of state law in his position as a police officer with the City of North Charleston.  Defendant Ghi, acted jointly with the co-defendants herein to produce constitutional violations, namely the unreasonable seizure of Plaintiff, in using unreasonable and excessive force to conduct the unlawful arrest.  As set forth more fully herein, Defendant Ghi used physical force and violence to slam Plaintiff against the wall, seize him, and then forcibly handcuff

11

Plaintiff. Any use of force to conduct an unlawful arrest is excessive, but Defendant's use of force and violence in this instance is objectively unreasonable.

45. Defendant Cole at all times relevant to this Complaint acted under color of state law when she voluntarily undertook the duties traditionally reserved by the State of South Carolina and undertook joint action with Defendant Ghi to unlawfully and unreasonably seize and arrest Plaintiff.

46. Defendant Northwoods Mall acted under the color of state law when they voluntarily undertook duties which are traditionally reserved for the State of South Carolina and acted jointly and by agreement with Defendant Ghi and Defendant Cole.

47. Particularly, Defendant's conduct deprived Plaintiff of his rights protected by the Fourth Amendment of the Constitution of the United States, guaranteeing citizens the right "to be secure in their persons…against unreasonable…seizures" of the person and their right to be free from unnecessary governmental interference.

48. Defendants, together and individually, conducted an unlawful and unreasonable stop and furthermore used excessive force during the unconstitutional seizure, arrest, and imprisonment of Plaintiff.

49. Defendant's actions were not objectively reasonable in light of the facts and circumstances, where Plaintiff did nothing illegal or suspicious and posed no threat to any person whatsoever.

50. As a direct and proximate result of Defendant's unreasonable seizure of Plaintiff and use of excessive force, Plaintiff has suffered and continues to suffer tremendous and irreparable emotional and mental harm and is entitled to actual and punitive damages.

### COUNT THREE- NEGLIGENT HIRING, SUPERVISION AND RETENTION AS TO NORTHWOODS MALL DEFENDANTS
### (STATE LAW CLAIM PURSUANT TO THE COMMON LAW OF SOUTH CAROLINA)

51. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

52. Defendants owed statutory and common law duties to the public at large, and to Plaintiff in particular, to refrain from negligently hiring, training, supervising and/or retaining employees.

53. Further, these Defendants had an obligation to hire and retain police officers who were free from racial animus and who would fulfill their law enforcement oath to serve and protect all Americans regardless of a person's age, race, color, religion, gender or national origin.

54. Upon information and belief, these Defendants were negligent in hiring and retaining Defendant Ghi and knowingly retained this officer whose prior conduct demonstrated racially motivated improper police conduct that should serve as an immediate disqualifier for any law enforcement officers.  Defendant Ghi maintains a documented history of deliberate indifference to the rights and privileges of the citizens that he has taken and oath to protect.

55. Defendant Ghi has been the subject of multiple previous complaints of false arrest and excessive force while employed as a police officer with the North Charleston Police Department.

56. At least one previous incident took place at the Northwoods Mall and involved Defendant Ghi and another North Charleston police officer who assaulted a fifteen-year-old girl, yelling profanities and threats such as, "I'm going to throw you on the (expletive deleted) ground and I'm going to sit on your mother's (expletive deleted) head."

57. Another separate occasion of excessive force and unlawful arrest by Defendant Ghi was set forth in *Paula B. Pete v. The City of North Charleston, a political subdivision of the State of South Carolina, and Dante Ghi, individually*; Civil Action Number 4:10-cv-1483-RBH-TER, filed in the United States District Court of South Carolina, Florence Division. In that case, Defendant Ghi told the complainant to "get the (expletive deleted) on the porch," and then used his Taser on complainant, striking her in the back and rendering her unconscious. Defendant Ghi charged that complainant with Interfering with Police and Resisting Arrest for which the complainant was fully acquitted on all charges.

58. Upon information and belief, prior to working for either Northwoods Mall or the North Charleston Police Department, Defendant Ghi was terminated for misconduct by the Spartanburg County Sheriff's Office due to multiple instances of excessive force and objectively unreasonable law enforcement conduct. Specifically, Defendant Ghi was found by his previous employer to have physically or psychologically abused members of the public and/or prisoners, including the physical and verbal abuse of a handcuffed subject on video recording.

59. Upon information and belief, these Defendants were negligent in hiring and retaining Defendant Cole and knowingly retained this officer who was upon information and belief undertrained, unqualified, or unable to perform the duties of a security guard as a reasonable person would.

60. Based upon Defendant Ghi and Cole's prior work history as well as their work while employed with Defendants, these Defendants knew or should have known that hiring and retaining them as police officers presented a danger to the public at large, and to Plaintiff in particular, and that it was foreseeable that Defendant Ghi and Cole would fail to perform their

responsibility in a reasonable manner that was consistent with generally accepted law enforcement procedure and protocol.

61. Defendant failed to perform reasonable training and supervision of its armed police officers including, but not limited to the following areas:

    a. Detention of persons;

    b. Arrest of persons;

    c. Safe practices for detainment, search, and arrest of persons for minor alleged infractions;

    d. Preventing unlawful conduct by its officers;

    e. Ensuring proper communication between officers and minors;

    g. Balancing lawful objectives with appropriate use of force; and

    h. Any additional particulars ascertained in discovery for this case or at trial.

62. As a direct, foreseeable and proximate result of the negligent, grossly negligent, reckless, willful and wanton acts and/or omissions of Defendants, Plaintiff Gantlin suffered conscious physical harm and injury, and endured pain and suffering, including mental distress, and emotional anguish.

63. Due to willful, wanton, reckless, grossly negligent, and negligent acts of the Defendants set out above, Plaintiffs are entitled to recover actual and punitive damages from Defendants as determined by a jury.

## COUNT FOUR- NEGLIGENCE AND GROSS NEGLIGENCE AGAINST DEFENDANTS GHI, COLE, AND NORTHWOODS MALL DEFENDANTS
### (STATE LAW CLAIM PURSUANT TO THE COMMON LAW OF SOUTH CAROLINA)

64. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

65. Plaintiff is informed and believes the Defendants owed a duty to the public in general and to the Plaintiff in particular to use due care in fulfilling their police duties and to ensure their conduct conformed to generally accepted police standards.

66. Plaintiff is informed and believes that at all times relevant hereto Defendant Ghi and Cole were employees of Northwoods Mall and its Police Department and as such Northwoods Mall is vicariously liable for their acts and/or omissions that proximately caused Defendant's detainment, arrests, and prosecution.

67. On October 22, 2016, Defendants failed to use due care and were grossly negligent, negligent, reckless, willful and wanton in the following particulars:

    a. Failing to follow proper protocol and procedures for the situation;
    b. Causing and allowing untrained officers to detain, search, and arrest the Plaintiff;
    c. Failing to use the appropriate degree of force for the situation; and
    d. In such other particulars as may be shown at trial or ascertained in discovery.

68. All of the above referenced acts and/or omissions and/or commissions are in violation of the common laws and statutes of the State of South Carolina, as well as the Defendants' obligations and duties to Plaintiff.

## COUNT FIVE- VIOLATION OF PLAINTIFF'S CIVIL RIGHTS BY NORTHWOODS MALL DEFENDANTS– CUSTOM AND POLICY (42 U.S.C. 1983)

69. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

70. Defendant Northwoods Mall is upon information and belief a private shopping mall doing business in North Charleston, South Carolina.

71. Upon information and belief and despite its status as a private shopping mall, Northwoods Mall deliberately and knowingly operates a police department comprised of both security guards and police officers from the City of North Charleston.

72. Further, this Defendant hired, retained, compensated and directed duly licensed law enforcement officers who were trained by the South Carolina Criminal Justice Academy, are police officers and who derive their policing powers from the State of South Carolina.

73. Further, Northwoods Mall knowingly engaged in a joint enterprise with state officials in prohibited police actions under the color of state law.

74. The investigation of crimes, the pursuit of citizens and the detainment of same are traditionally powers exercised exclusively by the State. This Defendant, however, knowingly involved itself in all aspects of law enforcement on a consistent and routine basis by and through its Police Department and its police officers.

75. By undertaking this important role this Defendant had a duty to use reasonable care and to safeguard the constitutional rights of the public at large and Plaintiff Jordan Gantlin in particular.

76. Upon information and belief and as the head policy makers for the Northwoods Mall Police Department and its officers, this Defendant acted with reckless and deliberate indifference to Plaintiff's civil rights, in that, as a matter of policy and custom, they failed to

adequately discipline, train, investigate, supervise or otherwise direct the Northwoods Mall Police Department, and Officers Ghi directly, concerning the civil rights of the citizens they exercised police powers over.

77. Further, this Defendant was negligent or otherwise failed to meet its duties, non-delegable and otherwise, which it owed to Plaintiff, in that Defendant and/or its real and/or apparent agents, did or failed to do one or more of the following acts of omission or commission, any or all of which were departures from the prevailing standard of care:

> a. Defendant failed to properly train Northwoods Mall police officers in the appropriate use of force;
>
> b. Defendant failed to properly supervise police officers;
>
> c. Defendant was deliberately indifferent to the fact that Defendant Ghi did not possess the requisite experience in police field work a reasonable police officer should have prior to active patrolling of Northwoods Mall, which should give rise to increased supervision and training;
>
> d. Defendant failed to properly supervise its employees and agents during the relevant time period up to and including Plaintiff's arrest despite notice that the officers were engaged in unreasonable behavior; and
>
> e. As well as any and all further particulars which may be demonstrated at trial.

78. At all times relevant hereto, Northwoods Mall knew or should have known that its failure to provide adequate training and supervision to its police officers on the use of appropriate policy action during encounters with the public, and in particular at the Northwoods Mall, would result in serious injury.

79. Defendant Northwoods Mall is vicariously liable for the tortious acts of its employees that were committed within the course and scope of their employment and further is liable for its own independent acts of negligence and gross negligence.

80. As a direct and proximate result of the acts of Defendant through its employees, Plaintiff has suffered and continues to suffer tremendous and irreparable emotional and mental harm and is entitled to actual and punitive damages and such other and further relief as this honorable Court and the jury deem just and proper.

### COUNT SIX- FALSE ARREST AND MALICIOUS PROSECUTION BY ALL DEFENDANTS
### (STATE LAW CLAIM PURSUANT TO THE COMMON LAW OF SOUTH CAROLINA)

81. Plaintiff reincorporates and realleges all preceding paragraphs as if fully set forth herein.

82. Defendant's conduct of stopping Plaintiff, searching him, placing him in handcuffs, detaining him in a back room of the Mall, arresting him, and then having him transferred to jail deprived Plaintiff of his liberty without justification.

83. Defendants and their employees, agents, and/or contractors intentionally restrained Plaintiff.

84. There was no lawful basis for Defendant's restraint and imprisonment of Plaintiff.

85. As a direct and proximate result of Defendant's false imprisonment of Plaintiff, Plaintiff has suffered and continues to suffer tremendous and irreparable emotional and mental harm and is entitled to actual and punitive damages.

**WHEREFORE**, Plaintiffs pray for a trial by jury and for the following:

   i. For a judgment against the Defendants, jointly and severally, for violating the Fourth and Fourteenth Amendments to the United States Constitution as set forth in this Complaint;

   ii. Judgment against Defendants, jointly and severally, for actual and punitive damages in the amount to be determined by the jury;

   iii. To award Plaintiffs reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law;

   iv. For all other and further relief as this Court deems just and proper.

Respectfully submitted,

             McLEOD LAW GROUP, LLC
             Post Office Box 21624
             Charleston, South Carolina 29413
             (843) 277-6655

             *s/ H. Cooper Wilson, III*
             W. Mullins McLeod, Jr., No. 7142
             H. Cooper Wilson, III No. 10107
             Michael Thomas Cooper, No. 12198

             and

             SAVAGE LAW FIRM
             15 Prioleau Street
             Charleston, South Carolina 29401
             (843) 277-6655
             Andrew J. Savage, III
             J. Scott Bischoff, II

March 27, 2019
Charleston, South Carolina